IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION

JEREMY WILLIAMS                                                              PLAINTIFF

VS.                                                          CIVIL ACTION NO. 3:16cv279-DPJ-FKB

B.E. BLACKMON, WARDEN                                                        DEFENDANT

**REPORT AND RECOMMENDATION**

Jeremy Williams is a federal inmate currently incarcerated at the Federal Correctional Institution, McKean, in Bradford, Pennsylvania. He is serving a 120-month term for a drug offense. Williams filed this petition pursuant to 28 U.S.C. § 2241 while he was incarcerated at the Federal Correctional Complex in Yazoo City, Mississippi (FCC-Yazoo). In his petition, Williams challenges a disciplinary proceeding in which he was found guilty and sanctioned with, *inter alia*, a loss of good conduct time.[1] Because his sanction affects the duration of his incarceration, this court has jurisdiction under § 2241 to review the disciplinary proceedings. *See Preiser v. Rodriguez*, 411 U.S. 475, 499 (1973).[2] Presently before the Court is the petition and Williams's motion for judgment [12]. Having considered the petition, the response to the petition, Williams's reply, and his motion, the undersigned concludes that Williams is entitled to a restoration of three days of good conduct credit.

On the afternoon of September 14, 2014, Officer A.J. Korkuch performed a visual search of Williams following a visit in the visitation room. During the search, Korkuch

---

[1] The incident and resulting disciplinary proceeding occurred at the Federal Correctional Institution-Schuylkill (FCI-Schuylkill) in Pennsylvania.

[2] Since Williams was incarcerated at FCC-Yazoo at the time he filed his petition, venue is proper in this district. *See, e.g., Howard v. U.S. Bureau of Prisons*, 487 F.3d 808, 811 (10th Cir. 2007).

discovered three fifty-dollar bills in Williams's left boot. Korkuch completed an incident report charging Korkuch with the commission of Prohibited Act § 217, "[g]iving money to, or receiving money from, any person for the purpose of introducing contraband or any other illegal or prohibited purpose." BOP Program Statement 5270.09, Table 1, *available at* https://www.bop.gov/policy/progstat/5270_009.pdf .[3] In the incident report, Korkuch described the search and the discovery of the currency. [8-3] at 2. The incident report was delivered to Williams that same day, and the incident was investigated by Lt. J. Duggett. Lt. Duggett advised Williams of his rights, after which Williams acknowledged that he understood his rights and admitted that he had received the money during visitation. [8-3] at 3. Williams declined to explain why he had received the money. *Id.*

A Unit Disciplinary Committee (UDC) hearing was held three days later. At the hearing, Williams admitted possession of the currency but argued that he should have been charged with a violation of code section 303, which prohibits possession of

---

[3] The prison disciplinary process begins with the issuance of an incident report prepared by a prison staff person. The report is normally served on the inmate within 24 hours. The next step is the appointment of an investigating officer (a supervisory-level staff member) and an investigation by him. The investigation includes a meeting between the investigator and the inmate at which the inmate is given the opportunity to make a statement. The inmate has the right to remain silent; however, an adverse inference may be drawn against him for doing so. When the investigator has completed his investigation, he records the results of his investigation on the incident report and forwards it, along with any other relevant materials, to the Unit Disciplinary Committee (UDC). If the alleged offense is a low or moderate severity offense, the UDC may make a determination as to guilt. Where the UDC determines that the inmate did not commit the offense, the UDC expunges the report from the inmate's file. Alternatively, it may refer the matter to the Discipline Hearing Officer (DHO). Referral to the DHO is automatic for high severity offenses. Where the matter is referred to the DHO, the UDC advises the inmate of his right to choose a staff representative for the hearing and to request witnesses. Following a hearing, the DHO issues a written decision. The decision may be appealed through the Administrative Remedy Program. *See generally* BOP Program Statement 5270.09 §§ 541.5-541.8.

2

currency, not section 217. [8-3] at 2.  Because of the severity level of the offense, the UDC referred the incident to the Discipline Hearing Officer (DHO).

The hearing was held before DHO K. Bittenbender on September 29, 2014. Williams had the assistance of a staff representative at the hearing.  Williams gave a statement in which he admitted possession of the currency but claimed to have received the money prior to the visit.  [8-1] at 2.  He also provided a written statement in which he explained that he had found the money on his way to work and stuck it in his boot but had then forgotten about the money until he was searched after the visit.  [8-1] at 7.  In the statement, Williams requested leniency and argued that his offense should be treated as a violation of code section 303 rather than section 217.  Williams presented no witnesses at the hearing.

The DHO issued a written decision on October 14, 2014.  The DHO found, based upon the evidence, that Williams had committed a violation of code section 303, which prohibits the possession of currency, rather than code section 217.[4]  [8-1] at 3.  In support of his finding, the DHO cited the incident report, photocopies of the currency found during the search, and Williams's admission that he possessed the currency. *Id.* He further found that Williams's possession of the currency represented "a threat to the orderly running of the institution" and was a "highly aggravated offense which greatly

---

[4] An inmate faced with the potential loss of good conduct time is entitled to advance notice of the charge against him.  *Wolff v. McDonnell*, 418 U.S. 539, 463-64 (1974).  The function of the notice requirement is to allow the inmate to "marshal the facts in his defense and to clarify what the charges are." *Id.* Where the notice gives sufficient facts to alert the inmate to the possible charges, it satisfies due process, even if it charges an offense other than the one of which the inmate is ultimately found guilty.  *See, e.g., Northern v. Hanks*, 326 F.3d 909, 910-11 (7th Cir. 2003); *Holt v. Caspari*, 961 F.2d 1370, 1373 (8th Cir. 1992). Williams does not challenge the DHO's decision to find him guilty of a code violation different from that charged in the incident report.

3

jeopardizes the safety of staff and inmates" warranting both forfeiture of good conduct time credited for previous years and disallowance of good conduct time available for the current year.  [8-1] at 4.  The DHO sanctioned Williams to forfeiture of 30 days of good conduct time, a 13-day disallowance of good conduct credit available for the year, 30 days of disciplinary segregation, a monetary fine of $100, and loss of telephone and visitation privileges for 18 months.  [8-1] at 3.

In support of his petition, Williams makes numerous allegations of violations of BOP policy and improper motives on the part of prison officials.  All of these allegations add up essentially to a claim that he was innocent and that the prison officers knew he was innocent but nevertheless prosecuted the charge against him for an improper purpose.  Specifically, he claims that Officer Korkuch fabricated the incident report in an effort to have him transferred to another facility, that Lt. Leonard knew the incident report was false and coerced an admission from him, and that DHO Bittenbender coerced him into signing an automatic withdrawal of funds for the payment of the $100 fine.

The record contains no evidence to support Williams's allegations that the charge against him was fabricated.  But even if there were such evidence, he would not be entitled to relief.  A federal court must defer to a finding of guilt in a prison disciplinary proceeding if there is "some evidence" to show that the inmate committed the offense. *Superintendent, Mass. Corr. Inst. v. Hill*, 472 U.S. 445 (1985).  The evidence cited by the DHO, including the photographs of the currency and Williams's own admissions of

4

guilt, is sufficient to meet this deferential standard. This ground for relief is without merit.

Williams's remaining argument is that his sanction of the loss of good time credit was in excess of what was allowed under BOP policy. The offense of which Williams was found guilty, possession of currency, constitutes a "moderate severity level" offense. 28 C.F.R. § 541.3 (Table 1); BOP PS 5270.09 (Table 1). Available sanctions for a moderate severity level offense include up to three months of segregation, a monetary fine, loss of privileges, and loss of good conduct time, as follows:

> B. Forfeit and/or withhold earned statutory good time or non-vested good conduct time up to 25% or up to 30 days, whichever is less, and/or terminate or disallow extra good time.
>
> B.1 Disallow ordinarily up to 25% (1-14 days) of good conduct time credit available for year.

*Id.*[5]

Williams contends that he should not have been sanctioned with any disallowance of good conduct time or with the forfeiture of good conduct credit because he had not committed any other moderate severity level offense during his current 12-month period. In support of this argument, he references sections of PS 5270.09, particularly § 541.4(b)(3), which provide for a mandatory sanction of the loss of good time credit where an inmate has committed two or more moderate severity level

---

[5] Federal inmates are eligible for an award of up to 54 days credit for each year served. 18 U.S.C. § 3624(b); 28 C.F.R. § 523.20(c). The credit is awarded at the end of each year. 18 U.S.C. § 3624(b)(1). The annual award is subject to disallowances for disciplinary violations. 28 C.F.R. § 523.20(e). For inmates serving a sentence for an offense committed on or after April 26, 1996 (PLRA inmates), the award, though earned and credited, does not vest until the date the prisoner is released from custody. 18 U.S.C. § 3624(b). Available sanctions under the disciplinary regulations include both the disallowance of credit that might otherwise be available for award at the end of the current year and the forfeiture of non-vested credit that has been awarded for previous years.

offenses during the current year. These sections do not exclude the possibility of forfeiture of good time credit or disallowance of good conduct time under other circumstances, and such sanctions are specifically allowed for a first offense. *See* 28 C.F.R. § 541.3 (Table 1). This argument is without merit.

There is, however, a problem with the amount of good conduct time which the DHO forfeited in Williams's case. According to the calculations set forth in the response to the petition, Williams had been awarded 108 days of good conduct time as of the date of his offense. Twenty-five percent of this amount is 27 days. The maximum forfeiture available for a moderate level offense is 25 percent or 30 days, whichever is less. Thus, the DHO's sanction of 30 days forfeiture of his good time credit was three days in excess of the available sanction.

Respondent argues that this sanction was nevertheless in accordance with BOP policy because the DHO found that Williams had committed a highly aggravated offense. In support of this position, Respondent relies upon that portion of PS 5270.09 which states that "[a] decision to go above the guideline is warranted for a greatly aggravated offense." Respondent's reading of the provision to allow for forfeiture of good conduct time in excess of that set forth in the available sanctions is erroneous. The provision refers to the guideline range for the *disallowance* of good conduct time credit available for the year, which is set forth in the B.1 sections of Table 1.[6] There is

---

[6] The B.1 sections provide that, for each severity level, the DHO is to "ordinarily" disallow up to a certain amount of the good conduct credit available for the year. The word "ordinarily" indicates that the range is not an absolute limit. Thus, the meaning of the sentence cited by Respondent is that the DHO may, where warranted, disallow a greater amount of the good conduct credit available for the current year. That this is the meaning of the sentence relied upon by Respondent is made clear by the fact that the sentence is contained in a section of PS 5270.09 entitled "(B.1) Disallowance of Good Conduct Time."

6

no comparable guideline range for *forfeiture* of good conduct time already credited, and the provision has nothing to do with forfeiture.  The provision does not authorize a DHO to forfeit credit in excess of what is available as a sanction under B sections in Table 1.[7]

Due process demands that a punishment not be in excess of that specified in the applicable statute or regulation.  *See Whalen v. U.S.*, 445 U.S. 684, 690 (1980). The DHO's forfeiture of three days of Williams's good conduct time in excess of what was available under the regulations constituted a due process violation.  For this reason, the undersigned recommends that Respondent be required to restore to Williams three days of the forfeited good conduct time credit.  The undersigned further recommends that all other relief be denied.

The parties are hereby notified that failure to file written objections to the proposed findings, conclusions, and recommendation contained within this report and recommendation within fourteen (14) days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the proposed factual findings and legal conclusions accepted by the district court.  28 U.S.C. § 636; Fed. R. Civ. P. 72(b); *Douglass v. United Services Automobile Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996).

Respectfully submitted, this the 17th day of January, 2018.


/s/ F. Keith Ball
United States Magistrate Judge

---

[7] In Williams's case, the DHO stayed within the disallowance guidelines range by disallowing only 13 days of credit available for the current year.