UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION

JEREMY WILLIAMS                                                                    PETITIONER

V.                                                         CIVIL ACTION NO. 3:16-CV-279-DPJ-FKB

B.E. BLACKMON, WARDEN                                                            RESPONDENT

ORDER

Petitioner Jeremy Williams is a federal inmate who was formerly incarcerated at the Federal Correctional Complex in Yazoo City, Mississippi ("FCC-Yazoo"). He brought this 28 U.S.C. § 2241 petition challenging a prison disciplinary proceeding in which he was found guilty and sanctioned with a loss of good-conduct time. Williams moved for judgment [12], and United States Magistrate Judge F. Keith Ball entered a Report and Recommendation ("R&R") [14], in which he recommended that three days of Williams's good-conduct time be restored but that all other relief be denied. The Court finds that the R&R should be adopted but will address the specific issues Williams raised in his Objection [17].[1]

I.   Background

An FCC-Yazoo officer found $150.00 in Williams's boot, leading a Discipline Hearing Officer ("DHO") to find that Williams violated section 303 of the Bureau of Prisons' Inmate Discipline Program, which prohibits possession of currency. The DHO sanctioned Williams to forfeiture of 30 days of good-conduct time, a 13-day disallowance of good-conduct credit available for the year, 30 days of disciplinary segregation, a monetary fine of $100, and loss of telephone and visitation privileges for 18 months.

---

[1] Although the Court ultimately rejects Williams's arguments, he did a commendable job researching and presenting his positions.

In his § 2241 petition, Williams essentially claimed that prison officials violated his rights in various ways related to the investigation and prosecution of the charged offense and that the DHO's sanction violated both the applicable regulations and Bureau of Prisons' Program Statement. Judge Ball rejected most of that in his R&R, but he did recommend that the Court restore three days of forfeited good-conduct time.

Williams filed an Objection [17] to the R&R, making three arguments. First, Williams says that because he did not commit more than one moderate-level offense, the DHO could not impose a sanction under 28 C.F.R. § 541.3, Table 1, specifically the loss of good-conduct time. Second, he argues that the DHO failed to consider mitigating factors in his case that would have permitted a lesser sanction. Finally, he contends that the DHO incorrectly found that the offense was highly aggravated. These issues are now ripe for review, and the Court has jurisdiction to consider them.[2]

II.  Analysis

To begin, Williams made no objection to Judge Ball's finding that "some evidence" supports the DHO's ruling that Williams committed the offense. *See* R&R [14] at 4–5 (quoting *Superintendent, Mass. Corr. Inst. v. Hill*, 472 U.S. 445 (1985) (establishing standard of review for prison disciplinary rulings)). And Respondent did not object to the finding that three days of good-conduct time should be restored. Those recommendations are adopted as unopposed.

Turning to Williams's objections regarding the lost time, sanctions for inmate disciplinary infractions are found in two sources: 28 C.F.R. § 541.3 and the Bureau of Prisons'

---

[2] Though Williams was transferred away from this district, the Court retains jurisdiction. *See Griffin v. Ebbert*, 751 F.3d 288, 290 (5th Cir. 2014) ("Jurisdiction [under § 2241] attached on that initial filing for habeas corpus relief, and it was not destroyed by the transfer of petitioner and accompanying custodial change.").

Program Statement 5270.09 (2011). Both offer various penalties based on the severity of the violation, and they share the same introductory language:

> (a) Prohibited acts. The list of prohibited acts are divided into four separate categories based on severity: Greatest; High; Moderate; and Low. We describe the prohibited acts in Table 1 - Prohibited Acts and Available Sanctions . . . .
>
> (b) Available sanctions. The list of available sanctions for committing prohibited acts is listed in Table 1 - Prohibited Acts and Available Sanctions.

28 C.F.R. § 541.3(a)−(b); Program Statement 5270.09, section 541.3.

Here, the DHO found that Williams violated section 303 of the Inmate Discipline Program, which is considered a "Moderate Severity Level Prohibited Act[ ]." 28 C.F.R. § 541.3, Table 1. And section 541.3(b)(3) of the Program Statement provides the available sanctions for such acts:

> Moderate Severity Level Offenses. The DHO imposes at least one sanction A through M [from Table 1], . . . . Sanction B.1 ordinarily must be imposed for a . . . PLRA inmate [i.e., an inmate sentenced for an offense committed on or after April 26, 1996, per the Prison Litigation Reform Act].

Williams is a PLRA inmate, and Table 1 lists various sanctions (identified under captions A through M) available for moderate offenses. *See* 28 C.F.R. § 541.3, Table 1, Moderate Severity Level Prohibited Acts, Subparts A–M. Two of those sanctions relate to good-conduct time:

> B. Forfeit and/or withhold earned statutory good time or non-vested good conduct time up to 25% or up to 30 days, whichever is less, and/or terminate or disallow extra good time (an extra good time or good conduct time sanction may not be suspended).
>
> B.1 Disallow ordinarily up to 25% (1−14 days) of good conduct time credit available for year (a good conduct time sanction may not be suspended).

*Id.* at Subparts B, B.1.

But according to Williams, "It is only when an inmate has committed 'two or more' moderate severity level offenses within one year, that the DHO can impose the available sanction

3

listed in Table 1 of 28 C.F.R. § 541.3(b)." Objection [17] at 3; *see also id.* at 2 (arguing that "the available sanctions for moderate severity level offenses are not to be imposed until an inmate has committed two moderate offenses during his/her current anniversary year") (quotation marks omitted).

Williams builds this argument from 28 C.F.R. § 541.4 and Program Statement 5270.09, section 541.4. *See* Objection [17] at 3. Both address "[l]oss of good conduct sentence credit as a mandatory sanction." 28 C.F.R. § 541.4; Program Statement 5270.09, section 541.4. And they both state:

> (a) You will lose good conduct sentence credit as a mandatory disciplinary sanction if you are in one of the following two groups: . . . (2) PLRA inmates . . . .
>
> (b) If you are [a PLRA inmate] and commit a prohibited act, you will lose good conduct sentence credit as a mandatory disciplinary sanction. The amount of good conduct sentence credit you will lose depends on the severity level of the prohibited act(s) committed, as follows:
>
> . . . .
>
> > (3) Moderate Severity Level Offenses. You will lose at least 14 days, or 25% of available credit if less than 54 days are available for the prorated period, after committing two or more Moderate severity acts during the current year of your good conduct sentence credit availability.

28 C.F.R. § 541.4; Program Statement 5270.09, section 541.4.

Williams reads that final passage to mean that no Table 1 sanctions can be imposed unless the inmate has two or more Moderate-Severity Acts. *See* Objection [17] at 3. And he finds further support for his argument in section 541.4 (B.1) of the Program Statement, which similarly states: "Moderate Severity Level Offenses. A minimum of 14 days (or, if less than 54 days are available for the prorated period, a minimum of 25% of available GCT) for each act committed if the inmate has committed two or more moderate severity level offenses during the current anniversary period."

4

But these provisions merely set the floor for inmates with multiple Moderate-Severity Acts, stating that they will lose "at least" a certain amount of good-conduct credit. Program Statement 5270.09, section 541.4(b)(3); *see also id.* section 541.4 (B.1) (setting a "minimum" loss for multi-offense inmates). This language does not address the available sanctions for inmates with a single moderate offense. For those inmates, section 541.3(b)(3) provides that "[t]he DHO imposes at least one sanction A through M, . . . . Sanction B.1 ordinarily must be imposed for a . . . PLRA inmate."

To the extent there is any doubt that an inmate with one Moderate-Severity Act will lose good-conduct credit, section 541.4(b) removes it. As noted before, that provision states: "If you are [a PLRA] inmate . . . and commit *a* prohibited act, *you will* lose good conduct sentence credit as a *mandatory* disciplinary sanction." Program Statement 5270.09, section 541.4(b); *accord* 28 C.F.R. § 541.4(b) (same); *see also* Program Statement 5270.09, section 541.8(g) ("If you committed *a* prohibited *act(s)*, the DHO can impose any of the available sanctions listed in Tables 1 and 2." (emphasis added)). Read as a whole, the regulations and the Program Statement belie Williams's argument that Table 1 sanctions are not available for a single Moderate-Severity Act.

This finding probably moots Williams's other objections. Nevertheless, the Court finds that they too lack merit. First, Williams objects to the DHO's finding that he committed a "greatly aggravated offense," when the actual violation was only a moderate offense. In making that finding, the DHO invoked an exception to the recommended sentences. Section 541.4 (B.1) of the Program Statement states: "A decision to go above the guideline is warranted for a greatly aggravated offense . . . . A decision above or below the guidelines is justified in the DHO report." Here, the DHO specifically found that the sanctions were appropriate because the offense was "a

5

highly aggravated offense which greatly jeopardizes the safety of staff and inmates." DHO Report [8-1] at 4.

Williams says in his Objection that the record does not support this finding. To support the argument, he cites *Bergin v. Spaulding*, where the petitioner violated prison rules by possessing two legal opinions he obtained from LexisNexis. No. 1:14-CV-01371, 2015 WL 5038476, at *4 (M.D. Pa. Aug. 26, 2015). While inmates are allowed certain legal materials in certain areas, the petitioner exceed that scope. *Id.* at *5. But the district court concluded that this was "a minor, technical violation" and that the record did not support a finding that it was a "greatly aggravated offense." *Id.* The court therefore granted the petition to the extent it sought to recoup some of the lost good-conduct time. *Id.*

This case is different. Williams possessed $150 in cash, the import of which is obviously different from possessing legal research in the wrong area. Under the Program Statement, the decision to go above the guideline must be "justified in the DHO report," which it was. *See Wallace v. Ebbert*, No. 1:11-CV-1936, 2012 WL 12973663, at *1 (M.D. Pa. July 2, 2012) (finding that DHO adequately supported aggravated-offense enhancement by noting that offense "threatens both the orderly running of the facility and the safety of both staff and inmates"), *aff'd*, 505 F. App'x 124 (3d Cir. 2012). Finally, there was at least "some evidence" to support the DHO's conclusion—including the nature of the offense itself. *Hill*, 472 U.S. at 447. So to the extent this issue remains relevant, it would not change the result.

Williams's final objection contends that the DHO failed to consider mitigating factors in his case that would have permitted a lesser sanction. This claim is not reflected in Williams's Petition, *see* Pet. [1]; Mem. [2], but he mentioned it in his "Response to Respondent's

Response." *See* Resp. [9] at 3. Regardless, the question is whether "some evidence" supports the DHO's conclusion. *Hill*, 472 U.S. at 447. It does.

III. Conclusion

For the foregoing reasons, Petitioner's Motion for Judgment [12] and his Petition [1] are granted in part as to three days good-conduct time. The motion and petition are otherwise denied. The Report and Recommendation [14] is adopted as the opinion of this Court. A separate judgment will be entered in accordance with Federal Rule of Civil Procedure 58.

**SO ORDERED AND ADJUDGED** this the 9th day of February, 2018.

                                                s/ *Daniel P. Jordan III*
                                                CHIEF UNITED STATES DISTRICT JUDGE